## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA f/u/b/o** | ) |
| **C.H. EDWARDS, INCORPORATED** | ) |
| **4005 S. Memorial Drive** | ) |
| **Greenville, NC  27834** | ) |
| | ) |
| **And** | ) |
| | ) |
| **C.H. EDWARDS, INCORPORATED** | ) |
| **4005 S. Memorial Drive** | ) |
| **Greenville, NC  27834** | ) |
| | ) |
| **Plaintiffs,** | |
| | |
| **v.** | Case: 1:08-cv-01001 |
| | Assigned To : Sullivan, Emmet G. |
| | Assign. Date : 06/11/2008 |
| | Description: Contract |
| **JAMES G. DAVIS** | ) |
| **CONSTRUCTION CORPORATION** | ) |
| **12530 Parklawn Drive** | ) |
| **Rockville, MD  20852** | ) |
| | ) |
| **Serve:** | ) |
| | ) |
| **CT Corporation System** | ) |
| **Registered Agent** | ) |
| **1015 15th Street, N.W., Suite 1000** | ) |
| **Washington, D.C.  20005** | ) |
| | ) |
| **and** | ) |
| | ) |
| **WALSH CONSTRUCTION COMPANY** | ) |
| **929 W. Adams Street** | ) |
| **Chicago, IL  60607** | ) |
| | ) |
| **Serve:** | ) |
| | ) |
| **Corporation Service Company** | ) |
| **Registered Agent** | ) |
| **1090 Vermont Avenue, N.W.** | ) |
| **Washington, D.C.  20005** | ) |
| | ) |
| **and** | ) |
| | ) |

118894/F/2

WALSH/DAVIS JOINT VENTURE                    )
99 New York Avenue, N.E.                     )
Washington, DC  20002                        )
                                             )
Alternative Address for Walsh/Davis Joint Venture )
1420 K Street, N.W., 7th Floor               )
Washington, DC  20005                        )
                                             )
and                                          )
                                             )
TRAVELERS CASUALTY                           )
AND SURETY COMPANY OF AMERICA                )
One Tower Square                             )
Hartford, CT  06183                          )
                                             )
Serve:                                       )
                                             )
        Commissioner of Insurance            )
        for the District of Columbia         )
        c/o Michelle Mathas                  )
        810 1st St., N.E., Suite 701          )
        Washington, DC  20002                )
                                             )
and                                          )
                                             )
ZURICH AMERICAN INSURANCE COMPANY            )
One Liberty Plaza, 30th Floor                )
New York, NY 10006                           )
                                             )
Serve:                                       )
                                             )
        Commissioner of Insurance            )
        for the District of Columbia         )
        c/o Michelle Mathas                  )
        810 1st St., N.E., Suite 701          )
        Washington, DC  20002                )
                                             )
                        Defendants.          )
                                             )

## COMPLAINT

Use-Plaintiff United States of America f/u/b/o C. H. Edwards, Incorporated and C. H.

Edwards, Incorporated (collectively "Edwards") hereby bring this Complaint against the

James G. Davis Construction Corporation ("Davis"), the Walsh Construction Company

("Walsh"), the Walsh/Davis Joint Venture (the "Joint Venture"), the Travelers Casualty and

Surety Company of America ("Travelers") and the Zurich American Insurance Company

("Zurich American") as Co-defendants, and state in support hereof as follows:

## I.  THE PARTIES

     1.     Use-Plaintiff and Plaintiff Edwards is a material supplier of construction materials

located in Greenville, North Carolina with its principal office located at 4005 S. Memorial Drive,

Greenville, NC  27834.

     2.     Defendant Davis is a general construction contractor which is organized and

existing under the laws of the Commonwealth of Virginia and is part of the Walsh/Davis Joint

Venture sued herein.

     3.     Defendant Walsh is a general construction contractor which is organized and

existing under the laws of the State of Illinois and is part of the Walsh/Davis Joint Venture sued

herein.

     4.     Walsh/Davis Joint Venture is a joint venture performing construction work in the

District of Columbia.

     5.     Defendant Travelers, upon information and belief, is a corporation duly

authorized to engage in the business of executing surety bonds in the District of Columbia with

its principal office located in Hartford, Connecticut.

     6.     Defendant Zurich American, upon information and belief, is a corporation duly

authorized to engage in the business of executing surety bonds in the District of Columbia with

its principal office located in New York, NY.

## II.  JURISDICTION AND VENUE

     7.     This Court has jurisdiction over this matter pursuant to the Miller Act, 40 U.S.C.

§§ 3131(a) *et seq.*

8.      Pursuant to the Miller Act, 40 U.S.C. § 3131(b), venue is proper in this Court since the project in question is located at 99 New York Avenue, N.E., Washington, DC 20002 and the Prime Contract was performed in Washington, D.C. (the "Project").

### III.  FACTS

9.      The Joint Venture, as the prime contractor on the Project, entered into Contract No. GS11P02MKC0059 (the "Prime Contract") with the General Services Administration to perform certain work known as the GSA Federal Office Building in Washington, D.C.

10.     Pursuant to the Prime Contract's terms, the Joint Venture as principal and Travelers and Zurich American as sureties executed and delivered to the United States a Payment Bond (the "Bond" attached as Exhibit 1 hereto), conditioned as required by the Miller Act, for the protection of all persons supplying labor and materials in the prosecution of the work provided for in the Prime Contract, including Plaintiff.

11.     On February 28, 2005, Edwards entered into a purchase order contract ("Purchase Order") attached as Exhibit 2 hereto, with the Joint Venture whereby Edwards agreed to deliver certain material to the Joint Venture per the terms of the Purchase Order between the Parties. During the course of performance under the Purchase Order, change orders were issued requiring additional performance by Edwards.

12.     Edwards performed all work requested of it by the Joint Venture in a workmanlike and timely fashion and is entitled to be paid in full for the deliveries it made.

13.     The Purchase Order amount plus acknowledged change orders total $1,300,351.00, consisting of the original Purchase Order amount of $879,000.00 plus acknowledged change orders of $421,351.00.

14.    To date, Edwards has received payments totaling $1,182,871.97. Therefore, the sum of $117,479.03 remains unpaid. (Exhibit 3 hereto).

15.    Edwards has performed work for which it remains unpaid, without legal justification or excuse, in the amount of $117,479.03. This amount has been due and owing for more than ninety (90) days but less than one (1) year from the date of the last delivery under the Purchase Order, the last delivery being at least June 14, 2007.

16.    The Joint Venture, Travelers and Zurich American have failed and refused to make payment to Edwards. The Joint Venture's failure to make payment is a material breach of the Purchase Order between Edwards and the Joint Venture. Travelers', Zurich American's and the Joint Venture's failure to make payment under the Bond is a material breach of their Bond obligation.

## IV.  CAUSES OF ACTION

### COUNT I
### (Miller Act Bond Claim)

17.    The preceding paragraphs 1-16 are incorporated as if fully set forth herein.

18.    From the date of filing this complaint, a period of more than ninety (90) days but less than one (1) year from the day on which the last materials supplied to the Project by Edwards has elapsed on the amount claimed of $117,479.03. Edwards has not been paid for the aforesaid materials.

19.    Edwards is a person entitled to the protection of the Miller Act, 40 U.S.C. §§ 3131(a) *et seq.* and is also a person protected by the Bond furnished by Travelers, Zurich American and the Joint Venture.

20.    Edwards is a claimant under the Bond; its claim, set forth herein, is recoverable under the Bond and the Miller Act; and all conditions precedent for its recovery hereunder have either been performed, have been satisfied, or have been waived.

21.     By reason of the foregoing, Travelers, Zurich American and the Joint Venture are justly indebted to Edwards under the Bond in the sum of $117,479.03.

WHEREFORE, Use-Plaintiff United States of America f/u/b/o C.H. Edwards, Incorporated and Plaintiff C.H. Edwards, Incorporated demand judgment against James G. Davis Construction Corporation (as one half of the Joint Venture), the Walsh Construction Company (as one half of the Joint Venture), the Walsh/Davis Joint Venture, Travelers Casualty and Surety Company and Zurich American Insurance Company, jointly and severally, in the amount of at least $117,479.03, plus interest, costs and such other and further relief as this Court deems just and proper.

## COUNT II
### (Breach of Contract Claim)

22.     The preceding paragraphs 1-21 are incorporated as if fully set forth herein.

23.     The Joint Venture is indebted, and despite demand has not paid, to Edwards the sum of $117,479.03.

24.     The Joint Venture's failure to make payment as due is a material breach of the Purchase Order between Edwards and the Joint Venture.

WHEREFORE, Plaintiff C.H. Edwards, Incorporated demands judgment against James G. Davis Construction Corporation (as one half of the Joint Venture), the Walsh Construction Company (as one half of the Joint Venture), and the Walsh/Davis Joint Venture, jointly and

severally, in the amount of at least $117,479.03, plus interest, costs and such other and further

relief as this Court deems just and proper.

Date:  June 11, 2008                              Respectfully submitted,

                                                  BELL, BOYD & LLOYD LLP


                                                  By: _____
                                                       Andrew N. Cook (D.C. Bar 416199)
                                                       Michael J. Schrier (D.C. Bar 444693)
                                                       1615 L Street, N.W., Suite 1200
                                                       Washington, DC  20036-5610
                                                       Telephone:  (202) 955-6828
                                                       Facsimile:  (202) 835-4118

                                                  Attorneys for Plaintiff United States f/u/b/o
                                                       C.H. Edwards, Incorporated and C. H.
                                                       Edwards, Incorporated

Travelers Casualty and Surety of America
Bond No. 8 SB 104232986 BCM
Zurich American Insurance Company
Bond No. 08717266

| PAYMENT BOND FOR OTHER THAN CONSTRUCTION CONTRACTS (See instructions on reverse) | DATE BOND EXECUTED (Must not be later than bid opening date) 6/2/2004 | OMB NO.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| Walsh/Davis Joint Venture 1420 K Street, NW, 7th Floor Washington, DC 20005 | ☐ INDIVIDUAL   ☐ PARTNERSHIP ☒ JOINT VENTURE   ☐ CORPORATION STATE OF INCORPORATION |

| SURETY(IES) (Name(s) and business address(es)) (Include ZIP code) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| Travelers Casualty and Surety Company of America One Tower Square, Hartford, CE 06183-6014 (860) 277-1564 AND Zurich American Insurance Company One Liberty Plaza, 30th Floor, New York, NY 10006 (800) 382-2150 | MILLION(S) 14 | THOUSAND(S) 267 | HUNDRED(S) 000 | CENTS 00 |
| | CONTRACT DATE 5/28/2004 | CONTRACT NO. GS11P02MKC0059 | | |

We, the Principal and Surety(ies) are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

(a) The above obligation is void if the Principal promptly makes payment to all persons (claimants) having a contract relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above and any duly authorized modifications thereof. Notice of those modifications to the Surety(ies) are waived.

(b) The above obligation shall remain in full force if the Principal does not promptly make payments to all persons (claimants) having a contract relationship with the principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above. In these cases, persons not paid in full before the expiration of ninety (90) days after the date on which the last labor was performed or material furnishing, have a direct right of action against the principal and Surety(ies) on this bond for the sum or sums justly due. The claimant, however, may not bring a suit or any action –

(1) Unless claimant, other than one having a direct contract with the Principal, had given written notice to the Principal within ninety (90) days after the claimant did or performed the last of the work or labor, or furnished or supplied the last of the materials for which the claim is made. The notice is to state with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished or supplied, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the Principal at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process is served in the state in which the contract is being performed, save that such service need not be made by a public officer.

(2) After the expiration one (1) year following the date on which claimant did or performed the last of the work or labor, or furnished or supplied the last of the materials for which the suit is brought.

(3) Other than in the United States District court for the district in which the contract, or any part thereof, was performed and executed, and not elsewhere.

WITNESS:

The Principal and Surety(ies) executed this bid bond and affixed their seals on the above date.

| AUTHORIZED FOR LOCAL REPRODUCTION Previous edition is usable | STANDARD FORM 1416 (REV. 10-98) Prescribed by GSA - FAR (48 CFR) 53.228(n) |
|---|---|



EXHIBIT

| | NAME & ADDRESS | Zurich American Insurance Company One Liberty Square, 30th Floor New York, NY 10006 | STATE OF INC. NY | LIABILITY LIMIT $ 208,095,000 | Corporate Seal |
|---|---|---|---|---|---|
| **SURETY B** | SIGNATURE(S) | 1. *Eugene P. Dessureau* | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | Eugene P. Dessureau Attorney-In-Fact | | | |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| **SURETY C** | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| **SURETY D** | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| **SURETY E** | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| **SURETY F** | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| **SURETY G** | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| BOND PREMIUM ▶ | RATE PER THOUSAND ($) | TOTAL ($) |
|---|---|---|

### INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces designated (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

6. Unless otherwise specified, the bond shall be submitted to the contracting office that awarded the contract.

STANDARD FORM 1418 (REV.2-99) BACK

AUG-01-2007 WED 09:16 AM                                    FAX NO.

TRAVELERS BOND NO. 8 SB 104232986 BCM
ZURICH BOND NO. 08717266

| CONSENT OF SURETY AND INCREASE OF PENALTY | 1. CONTRACT NUMBER GS11P02WKC0059 | 2. MODIFICATION NUMBER P004 | 3. DATED Aug 5, 2004 |
|---|---|---|---|

The Surety (co-sureties) consents (consent) to the foregoing Contract Modification and agrees (agree) that its (their) Bond shall apply and extend to the contract as modified or amended. The Principal and Surety (co-sureties) further agree that on or after the execution of this Consent, the penalty of the performance bond or bonds increased by the sum EIGHTEEN MILLION SEVEN HUNDRED NINETY FOUR THOUSAND NINETY ONE ($18,794,091.00) DOLLARS and the Penalty of the Payment Bond is increased by EIGHTEEN MILLION SEVEN HUNDRED NINETY FOUR THOUSAND NINETY ONE ($18,794,091) DOLLARS.  However, the increase of the Liability of each co-surety resulting from this consent shall not exceed the sums shown below.

| 5. NAME OF SURETY(IES) | 6. INCREASE IN LIABILITY LIMIT UNDER PERFORMANCE BOND | 7. INCREASE IN LIABILITY LIMIT UNDER PAYMENT BOND |
|---|---|---|
| A. TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA | $11,276,454.60 | $11,276,454.60 |
| B. ZURICH AMERICAN INSURANCE COMPANY | $7,517,636.40 | $7,517,636.40 |
| C. | $ | $ |

| 8. INDIVIDUAL PRINCIPAL | A. BUSINESS ADDRESS | B. SIGNATURE | |
|---|---|---|---|
| | | C. TYPED NAME AND TITLE | (Affix Seal) |
| | | D. DATE THIS CONSENT EXECUTED | |

| 9. CORPORATE PRINCIPAL | A. CORPORATE NAME AND BUSINESS ADDRESS WALSH/DAVIS JOINT VENTURE 1420 K Street, NW, 7th Floor Washington, DC 20005 | B. PERSON EXECUTING CONSENT (Signature) BY C. TYPED NAME AND TITLE Daniel Walsh President D. DATE THIS CONSENT EXECUTED October 7, 2004 | (Affix Corporate Seal) |

Joint Venture Principal

The Principal or authorized representative shall execute the Consent of Surety with the Modification to which it pertains.  If the representative is g attorney-in-fact) that signs the consent is not a member of the partnership, or joint venture, or an officer of the corporation involved.  a Power-of-Attorney or a Certificate of Corporate Principal must accompany the consent.

## 10. CORPORATE/INDIVIDUAL SURETY (CO-SURETIES)

| | A. CORPORATE AND INDIVIDUAL SURETY'S NAME AND ADDRESS | B. PERSON EXECUTING CONSENT (Signature) | |
|---|---|---|---|
| A | TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA One Tower Square Hartford, CT 06183 | BY C. TYPED NAME AND TITLE EILEEN LUCITT Attorney-In-Fact F. DATE THIS CONSENT EXECUTED 10-7-2004 | (Affix Corporate Seal) |
| B | ZURICH AMERICAN INSURANCE COMPANY One Liberty Plaza 30th Floor New York, NY 10006 | BY C. TYPED NAME AND TITLE Eugene F. Dessureau Attorney-In-Fact D. DATE THIS CONSENT EXECUTED 10-7-2004 | (Affix Corporate Seal) |
| C | A. CORPORATE/INDIVIDUAL SURETY'S NAME | BY C. TYPED NAME AND TITLE D. DATE THIS CONSENT EXECUTED | (Affix Corporate Seal) |

Add similar signature blocks on the back of this form if necessary for additional co-sureties.

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 1415 (REV 7-1993)
Prescribed by GSA-FAR (48 CFR) 53.228(i)

FILE COPY

 

## Walsh/Davis Joint Venture
"Buyer"

A Member of the Walsh Group

99 New York Avenue, NE
Washington, DC 20002

## PURCHASE ORDER

| | |
|---|---|
| Purchase Order Number: **204065-015** | Date: **November 18, 2004** |

To "Seller": C.H. Edwards Incorporated
4005 S. Memorial Drive
Greenville, NC 27834
Phone: (252) 756-8500
Fax: (252) 756-3884

F.O.B. Point: Delivered unless otherwise specified.

Ship On (Or By): As Directed by Buyer unless otherwise stated.

Shipping Address: 99 New York Avenue, N.E.
Washington, DC 20002

Project Name: GSA Federal Building

Item Specifications By: Moshe Safdie and Associates

Seller agrees and warrants that all material and/or equipment described herein complies in all respects with technical and general requirements of the plans and specifications on this project.

Seller shall ship the following materials subject to conditions stated hereafter:
Mail invoice showing order number with bills of lading attached immediately after shipment is made. Advise promptly if unable to make immediate shipment. Advise receipt and acknowledgement of this order promptly. No packaging charges are allowed. Goods subject to our inspection on arrival, notwithstanding prior payment to obtain cash discount. Buyer reserves the right of rejection due to inferior quality, workmanship or failure to comply with specifications for a period not to exceed thirty days after final permanent installation. Goods rejected will be returned with costs of freight and removal payable to buyer in advance of re-shipment. Returned or rejected goods are not replaceable except on the written order of buyer.

## Scope of work:

Subcontractor is responsible for the supply of all hollow metal frames, steel doors, wood doors, door hardware and associated work in accordance with the scope of work included with this exhibit and the requirements of the Contract Documents including the attached Exhibits C, D and E.

1.   All General Requirements specified in the Specifications, including revisions through Amendment 14 and as indicated on the Contract Drawings, including but not limited to:

|   |   |   |
|---|---|---|
| a. | Specifications 01100 | Summary |
| b. | Specifications 01140 | Work Restrictions |
| c. | Specifications 01230 | Alternates |
| d. | Specifications 01260 | Options |
| e. | Specifications 01270 | Unit Prices |
| f. | Specifications 01310 | Project Management and Coordination |
| g. | Specifications 01320 | Construction Progress Documentation |
| h. | Specifications 01321 | Network Analysis Schedule |
| i. | Specifications 01322 | Photographic Documentation |
| j. | Specifications 01330 | Submittal Procedures |
| k. | Specifications 01335 | LEED Submittals and Scorecard |
| l. | Specifications 01400 | Quality Control |
| m. | Specifications 01405 | System Quality Assurance |
| n. | Specifications 01410 | Mock-ups |
| o. | Specifications 01411 | Blast Resistance Requirements |
| p. | Specifications 01420 | References |
| q. | Specifications 01500 | Temporary Facilities and Controls |
| r. | Specifications 01505 | LEED Construction Waste Management |
| s. | Specifications 01515 | LEED Construction Indoor Air Quality |
| t. | Specifications 01525 | LEED Construction Pollution Controls |
| u. | Specifications 01546 | Safety and Health |
| v. | Specifications 01593 | Security Requirements |
| w. | Specifications 01600 | Product Requirements |
| x. | Specifications 01700 | Execution Requirements |
| y. | Specifications 01770 | Closeout Procedures |

RECEIVED

MAR 0 4 2005

C.H. EDWARDS



EXHIBIT
2

| z. | Specifications 01781 | Project Record Documents |
|----|----------------------|--------------------------|
| aa. | Specifications 01782 | Operations and Maintenance Documentation |
| bb. | Specifications 01810 | Commissioning of MEP/FP and Commissioning Plan |
| cc. | Specifications 01820 | Demonstration and Training |

2.    All work included in the following Specifications and indicated on the Drawings as detailed by Exhibit C, including revisions through Addenda 6, as applicable to the Scope of this contract:

a.    Specification 08114 Steel Doors and Frames
b.    Specification 08211 Wood Doors
c.    Specification 08711 Door Hardware (Hardware for Aluminum Storefronts by Others)
d.    Specification 08720 Door Hardware / Security System Interface

3.    Subcontractors Scope of Work shall include but not be limited to the following:

a.    Subcontractor is responsible for the complete supply of all hollow metal frames, steel doors, wood doors, door hardware and associated work as detailed within the Contract Documents.

b.    Subcontractor's lump sum pricing is firm for the duration of the contract and includes the selection by the Owner of the Base Contract Offer, Option 1A, Option 1B, Option 1C, Option 3A, Option 10A, Alternate 1, Alternate 2, Alternate 3, Alternate 5, Alternate 6 and Alternate 8. Subcontractor acknowledges that the lump sum pricing for this agreement is based on the selection of these options and is firm for the duration of this agreement.

c.    Subcontractor will furnish for approval, detailed mock-up(s) material samples, shop drawings, and layout drawings as detailed within the Contract Documents.

d.    Subcontractor is responsible to comply with all performance requirements of the Contract Documents as it relates to materials included with this Subcontract Agreement.

e.    Subcontractor is responsible for coordinating all deliveries with the Contractor per the project schedule.

f.    Subcontractor is responsible to provide fully coordinated drawings for all work included with this Subcontract Agreement.

g.    Where required of the Contract Documents, Subcontractor is responsible to provide the services of the manufacturer's field representatives to review and inspect installations for compliance.

h.    Subcontractor acknowledges that the following scopes of work are included with this Subcontract Agreement and are listed here for clarification only and not to define the complete scope of work required of this Subcontract Agreement and the Contract Documents:

1.    Supply all wood doors and frames.
2.    Supply all steel frames and doors.
3.    Supply of aluminum door frames and storefronts by others.
4.    Supply security hardware, and coordinate with other trades.
5.    Supply all door hardware, (Hardware for Aluminum Storefronts by others)
6.    Glazing at hollow metal frames by others.

i.    Subcontractor is responsible for all notes on the Contract Documents as it relates to supplying frames, doors and hardware included with this Subcontract Agreement.

j.    Subcontractor is responsible to design and detail work so as to comply with loading requirements of the structural drawings of the Contract Documents.

k.    Subcontractor acknowledges that the Owner has provided answers to questions through addendums and amendments which clarify and revise details within the Contract Documents and the final scope of work included with this Subcontract Agreement includes the incorporation of these responses where applicable.

l.    Subcontractor is responsible to implement practices and procedures to meet the project's environmental goals, which include achieving a LEED building rating in accordance with Specification 08114, 08211, 08711, 08720 and Division 1 General Requirements and the Contract Documents.

m.    Contractor is responsible for all hoisting and rigging of material.

n.    Subcontractor is responsible to conduct preinstallation conference(s) to comply with the requirements of Division 1 for all specifications indicating a preinstallation conference.

o.    Subcontractor is responsible to supply all materials per metric dimensions as specified in the specifications and Contract Documents.

p.   Subcontractor is responsible to supply all louvers as specified in the specification 08114 and the Contract Documents.

q.   Subcontractor is responsible to fabricate all steel doors and frames as specified in the specification 08114 and the Contract Documents.

r.   Subcontractor is responsible for factory priming for field-painted finishes as specified in the specification 08114 and the Contract Documents.

s.   Subcontractor is responsible to supply all fire-rated doors and smoke control doors as specified in the specification 08114 and the Contract Documents.

t.   Subcontractor is responsible to supply all wood doors as specified in the specification 08211 and the Contract Documents.

u.   Subcontractor is responsible to supply all material certificates including but not limited to wood certification documentation from manufacturer, declaring conformance with Forest Stewardship Council Guidelines as specified in the specification 08211 and the Contract Documents.

v.   Subcontractor is responsible to prep all doors and frames to receive hardware/fasteners as specified in specification 08211 and the Contract Documents.

w.   Subcontractor is responsible to coordinate all material deliveries, and approved door/hardware schedules with the installation contractor.

x.   Subcontractor is responsible to supply all door hardware as specified in the specification 08711 and the Contract Documents, (Hardware for Aluminum Storefronts by others).

y.   Subcontractor is responsible to attend and conduct a keying conference at the project site as specified in the specification 08711 and the Contract Documents.

z.   Subcontractor is responsible to attend and conduct a preinstallation conference at the project site as specified in the specification 08711 and Contract Documents.

aa.   Subcontractor is responsible to supply the following: (20) ea temporary construction keys, (5) ea master keys per master group, (3) ea change keys per cylinder or keyed alike group, (3) ea key blanks per cylinder, as specified in the specification 08711 and the Contract Documents.

bb.   Subcontractor is responsible to supply all key cabinets as specified in the specification 08711 and the Contract Documents.

cc.   Subcontractor is responsible to supply all security door hardware as specified in the specification 08720 and the Contract Documents.

| Item No. | Description | Cost Code, Notes | Amount |
|---|---|---|---|
| 1 | Hloow Metal Frames, Doors & Hardware | 08-80100-09 | $879,000.00 |
| **Total Value of Purchase Order** | | | **$879,000.00** |

## Terms and Conditions of Sale:

**1.)Complete Agreement:** This purchase order, including these Terms and Conditions, the plans and specifications, and any additional terms and conditions incorporated into or attached hereto, constitutes the entire agreement between the parties hereto. Commencing performance or making shipments or deliveries hereunder or any acknowledgement hereof by Seller, notwithstanding any proposals or terms and conditions additional to or different from those contained herein, shall be deemed an acceptance by Seller hereof and Buyer shall be bound only by the terms and conditions of this purchase order. Buyer recognizes that Seller may, for operating convenience, desire to utilize its own form of sale memorandum in acknowledging this order, or acknowledge it otherwise than by simple acceptance. However, it is mutually agreed that any provisions in the form of acceptance used by the Seller which modify, conflict with, or contradict any provision of this order, shall be deemed to be null and void.

**2.)Work To Be Performed:** Seller shall perform fully the work and furnish the materials described herein at the price or prices set forth opposite each item of work within the times required by Buyer. Those prices shall remain firm for the duration of this procurement unless specifically stated otherwise on the face hereof. The work to be done hereunder is a portion of the work required of Buyer under the General Contract. The General and Special Conditions of said General Contract, including the technical requirements or specifications and drawings, are hereby incorporated herein. Buyer's rights shall also include the right to increase or decrease quantities at the unit price shown prior to receipt of the complete order at the job site. Seller shall perform all work included within the general classification of the work hereinafter described to the same extent that Buyer is required to perform such work under the General Contract and shall furnish all labor, materials, tools, equipment and incidentals required to perform all of the work included within said general classifications.

**3.)Changes and Extra Work:** a.) Buyer reserves the right by written order only to make any change, including additions, reductions or deletions, in the work to be performed or materials to be furnished by Seller, to include changes or extra work ordered by the Owner, and Buyer shall make an appropriate equitable adjustment therefor in the price and time of performance. If Seller shall disagree with any such adjustment, it shall give, within seven (7) calender days receipt of such order, written notice to Buyer of a claim for additional compensation or for additional time and further adjustment shall be agreed upon in writing by the parties hereto, but Seller shall not suspend or delay proceeding with the changed work pending such agreement.

**b.)**   No claim for additional compensation, whether for extra labor or materials furnished, changes or otherwise, shall be allowed by Buyer in favor of Seller unless within seven (7) calendar days after such claim arises Seller has given Buyer written notice of its claim.

**c.)**   Any extra, changed or additional work performed by Seller, whether ordered by Buyer or Owner, shall be performed pursuant to, in accordance with, and subject to all of the terms and conditions of this purchase order.

**4.)Payments:**



**a.)**   Except as provided herein, payment shall be by lump sum upon receipt of approval of, and payment for, the materials herein by the final intended Owner. If any materials are specially manufactured to meet the specific requirements of this order, payment for such materials is subject to a 10% retainage until such time as the Buyer can determine that such specially manufactured materials will satisfactorily meet the specific requirements of this order. This retention provision shall have no effect on discount for that portion paid. This retention provision will not apply to standard off-the-shelf materials. The acceptance by Seller of final payment hereunder shall release Buyer and its surety of all claims arising under or by virtue of this purchase order, except claims previously submitted in writing.

**b.)**   If Buyer shall require it, Seller shall furnish a waiver of liens and release of claims by Seller as a condition to final payment. No payment shall operate as approval or acceptance of defective workmanship or materials. The estimates of Owner, or of Buyer if Owner makes no separate estimate, as to the amount of work done or materials furnished by Seller shall be final and binding, if reasonable. In the event of any overpayments, Seller shall reimburse Buyer for any such overpayments after final quantities have been determined by Buyer or Owner.

**c.)**   Payments otherwise payable hereunder may be withheld in whole or in part by Buyer on account of defective materials or work not remedied, claims filed or evidence showing reasonable probability of filing of claims by unpaid suppliers of labor, materials or equipment to Seller, failure to cure any default or to perform any term to be performed hereunder or a reasonable doubt the Seller can complete this purchase order within the time required or for the balance of the purchased order price then unpaid. If the foregoing conditions are removed, the withheld payments shall promptly be made. If such conditions are not removed, Buyer may on five (5) calendar days notice to Seller take such steps as in its judgment may be required to rectify the same and all costs and expenses incurred by Buyer therefor shall be paid by the Seller.

**d.)**   The prices herein specified shall, unless otherwise expressly stated, include all taxes and duties of any kind levied by federal, state, municipal, or other governmental authority, which either party is required to pay with respect to the production, sale or shipment of the materials covered by this agreement, and also all charges for packing, loading and shipping. Transportation charges shall be a part of the price(s) unless otherwise clearly stated. In any event, the Seller shall prepay freight including appropriate insurance and invoice in accordance with the terms and conditions stipulated herein.

**e.)**   When invoices, subject to cash discount, are not mailed on the date of shipment, or are not accompanied by bills of lading, the discount period will begin on the day both invoices and bill of lading reach the Buyer.

**5.)Risk of Loss:**

The risk of loss shall pass to Buyer only after Buyer makes its final inspection of the materials as provided below. Seller's delivery to a carrier or to an intermediate party shall not be deemed actual delivery of goods to the Buyer.

**6.)Delivery:**

**a.)**   TIME IS OF THE ESSENCE HEREOF. Seller shall deliver as directed by Buyer. Failure of the Seller to make timely and prompt delivery of the materials as directed by the Buyer will be a material breach by the Seller and shall make Seller liable for all damages, incidental and consequential, as well as without limitation any liquidated damages under the General Contract, suffered as a result thereof by Buyer. Buyer reserves its right to cover, and to charge Seller with any resulting loss or increased costs. Unless a delivery date is otherwise specified on the face hereof, all deliveries of materials shall conform to the date or dates specified from time to time by Buyer's representative.

**b.)**   Buyer shall give Seller an extension of time for any delays beyond the control of Seller and its subcontractors and suppliers, if Seller shall give written notice thereof to Buyer within seven (7) calendar days after the commencement of any such delay; provided, however, that if Buyer's performance under the General Contract is delayed thereby Seller shall be entitled to only that extension of time to which Buyer is allowed therefor by Owner.

**7.)Assurances:**

If Buyer shall have reasonable grounds to question Seller's intent or ability to perform, Buyer may, in writing, demand that Seller give adequate assurance, in writing, of due performance. If such a demand is made and no written assurance is given within (5) calendar days, Buyer may treat this failure to give such assurance as an anticipatory repudiation of the contract.

**8.)Defaults by**
**Seller:**

**a.)**   If Seller defaults or if Seller shall fail to commence or complete work or any stage thereof within the time specified, or shall become involved in any labor difficulty, or shall (if an individual) die or become disabled in any respect, or shall (if a business entity) dissolve or terminate its existence, or shall fail to perform any of the terms and conditions of this purchase order required by it to be performed, Buyer shall, at its option and in addition to and without prejudice to any other rights afforded herein or by law, after giving Seller forty-eight (48) hours' notice in writing, have the right to terminate the right of Seller to perform work hereunder, or to take over completion of the work.

**b.)**   Seller shall not be entitled to receive any further payment under this purchase order until the work is completed and has been accepted by Owner, at which time, if the unpaid balance of the amount to be paid under this purchase order, including an appropriate allowance for any use of Seller's tools, equipment, materials and supplies, exceeds the expenses incurred by Buyer in completing the work, such excess shall be paid by Buyer to Seller: but if such expenses shall exceed such unpaid balance, then Seller shall pay the difference to Buyer.

**c.)**   As used herein, the term "expense" shall include, but not be limited to, the costs of Buyer for completing the work, including labor, materials, equipment, all legal expenses, compensation for additional administrative and supervisory services, all charges by others employed by Buyer to complete or correct any part of the work, and overhead and profit thereon, and in addition thereto any consequential damages suffered by Buyer as a result of such default, including, without limitation, any liquidated damages or other charges assessed by Owner against Buyer as a result thereof. Buyer shall certify the amount of such expenses, which shall be binding upon the parties hereto, and Buyer shall be entitled to a lien upon any property of Seller, possession of which Buyer shall have obtained as hereinabove provided, as security for payment and such expenses to Buyer.

**d.)**   Buyer shall be entitled to exercise any rights then allowed by Federal Bankruptcy laws, if Seller shall become insolvent or file for or become subject to any form of bankruptcy proceeding.

**9.)Inspection:**

Buyer and Owner shall have the right to inspect and test the materials at Seller's plant any time prior to shipment, and to final inspection within a reasonable time after arrival at the ultimate destination. The materials shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of the material shall in no way impair Buyer's right to reject nonconforming goods, to recover damages or exercise any other remedies to which Buyer may be entitled, notwithstanding Buyer's knowledge of the nonconformity, its substantiality, or the ease of its discovery. Seller shall be liable for all inspection, reshipment and return costs on nonconforming goods. Seller shall not replace returned materials unless so directed by Buyer in writing. Rejection by Buyer of any lot or individual item furnished under this purchase order does not relieve Seller of its obligation to deliver conforming items in the quantities set forth in this purchase order.

| | |
|---|---|
| **10.)Warranties:** | a.)    Seller warrants to Buyer and its successor in interest to the materials and services that the same shall be free from all defects, shall be of the quality specified or of the best grade of their respective kinds if no quality is specified, shall be fit for the purpose intended, that the same shall be merchantable, and shall conform to the specifications, drawings, samples or other description contained herein or in Buyer's General Contract. All warranties implied by law or usage of trade are incorporated herein to apply to any services as well as the materials covered hereby and shall run in favor of Buyer and its successor in an interest to the goods and services. |
| | b.)    Seller guarantees the Buyer and its successor in interest to the materials and services against any and all defects in workmanship and materials that may develop for a period of eighteen  (18) months following delivery to Buyer or twelve (12) months following acceptance of the goods by Buyer's successor in interest, whichever period is longer, unless a longer period is set forth in the General Contract.  If such a longer period is set forth, then that longer period shall govern. |
| | The materials and services are ordered by Buyer in reliance on each and all of the warranties and guarantees specified herein and implied by law of usage of trade, and said warranties and guarantees shall control even if Seller's quotation to Buyer or Seller's form of acknowledgement or acceptance of this purchase order attempts to disclaim said warranties or guarantees or to limit buyer's remedy for breach.  Seller may not attempt to shorten the normal statute of limitations provided for breaches of any terms, provisions or warranties in this agreement.  The retention provided in paragraph 4(a) above on specifically manufactured materials is in addition to any warranties provided herein. |
| **11.)Non-Waiver:** | No action or failure to act by either party shall constitute a waiver of any right or duty afforded under this agreement.  Failure of Buyer to insist upon strict performance of any of the terms and conditions hereof, or failure or delay to exercise any rights or remedies provided herein or by law or failure to properly notify Seller in the event of breach or to notify Seller of a rejection of nonconforming materials or to specify with particularity any defect in nonconforming materials after rejection or acceptance, or the acceptance of or payment for any materials hereunder, or approval of design or shop drawings, shall not release Seller of any warranties or obligations of this purchase order and shall not be deemed a waiver of any right of Buyer to insist upon strict performance hereof or any of its rights or remedies as to any such materials, regardless of when shipped, received or accepted, or as to any prior or subsequent default hereunder, nor shall any purported oral modification or rescission of this purchase order by Buyer operate as a waiver of any of the terms hereof. |
| **12.)Infringement:** | Seller warrants that the materials sold under purchase order, whether designed and manufactured so as to comply with Buyer's specifications or otherwise, shall be free of any claim, whether rightful or otherwise arising from the law of patent, trademark, copyright, trade restrictions, or any other claims of property rights.  Seller shall indemnify, hold harmless and defend Buyer and its successor interest to the goods from any and all such claims, from any legal proceedings arising therefrom, and from any liabilities, legal expenses, including counsel fees, damages and costs resulting, or claimed to result, therefrom. |
| **13.)Compliance:** | a.)    Seller shall, to the extent permissible under federal law and any applicable state and local laws, comply with and be bound by all applicable Federal Labor Standards Provisions, all Fair Employment Practices Provisions and Regulations of any federal, state or other governmental authority having jurisdiction, and the Equal Opportunities Clause and related provisions contained in the General Contract.  Seller shall likewise comply with all laws, orders, regulations and statutes with respect to safety, accident prevention, safety equipment and practices, including the accident prevention and safety programs of Owner and Buyer. |
| | b.)    Seller shall indemnify and hold harmless Buyer (including its officers, agents and employees) from claims, liability and loss (including costs and attorneys' fees) arising from injury (including death resulting therefrom), damages or other loss caused or alleged to have been caused by any violation or infraction by Seller of any law, order, regulation or statute relating to safety of employees. |
| **14.)Indemnification:** | Seller shall indemnify, defend and save harmless Buyer from and against any and all claims, debts, demands, damages (including direct, liquidated, consequential, incidental or other damages), judgements, awards, losses, liabilities, interest, attorneys' fees, costs and expenses of whatsoever kind or nature at any time arising out of any failure of Seller to perform any of the terms and conditions of this purchase order or which are caused or occasioned by, or claimed to be caused or occasioned by, any act, omission, fault or negligence, of Seller or anyone acting under its direction or control, or on its behalf in connection with or incident to the work.  Without limiting the generality of the foregoing the same shall include injury or death to any person or persons, including agents and employees of Owner, Buyer and Seller, and damage to any property, regardless of location, and shall extend to any similar obligations of Buyer undertaken by it under the General Contract with respect to the work hereunder. |
| **15.)Assignments, Setoff:** | Any delegation, subletting or assignment by operation of law or otherwise, of all or any portion of the obligations to be performed hereunder by Seller, without the prior written consent of Buyer, shall be void and shall operate as a breach of contract. Buyer may setoff against any amount payable to any person under this purchase order any claim or charge it might have against Seller. |
| **16.)Definitions:** | Buyer means the corporation identified as "Buyer" on the face hereof.  Whenever Buyer is not the ultimate consumer of the materials to be furnished hereunder, all rights, benefits and remedies conferred upon Buyer shall accrue and be available to and are for the express benefit of the successors in interest to the materials, including the Owner.  Seller means the person, firm or corporation to which this purchase order is addressed.  The materials means those articles, materials, supplies, drawings, data and inspection and testing specified or required to furnish the materials and services ordered and any work required to be performed hereunder. |
| **17.)Stoppage or Suspension of Work:** | a.)    If Owner with or without cause shall terminate the General Contract or suspend work under the General Contract, or if Owner shall fail to pay when due any sum payable under the general Contract, Buyer may order Seller to stop or suspend work hereunder and Buyer shall be liable to Seller for any such stoppage or suspension only if and to the extent that Owner shall be liable to Buyer therefor.  If Seller shall claim that it is entitled to additional compensation or damages or to an extension of time by reason of any act or omission of Owner or for which Owner is responsible or by reason of any delay caused by any act or omission of Owner, Seller shall submit such claim in writing to Buyer within seven (7) calender days of the beginning of any such occurrence and Buyer shall on behalf of Seller submit the claim to Owner, or Buyer may, at its option, authorize Seller to prosecute such claim in Buyer's name. |
| | b.)    Seller shall cooperate fully with Buyer in such submission and in all steps taken therewith, shall prepare all supporting data and do all things necessary to present said claims properly, and shall reimburse Buyer for all expenses incurred by it in connection therewith, the amount thereof to be determined by Buyer.  With respect to changes, extra work or any other claims arising under this purchase order, Seller shall comply with and be bound by any claims procedure, including arbitration, contained in the General Contract or required by Owner, to the extent applicable thereto if and only to the extent that Owner shall pay additional compensation or damages or allow additional time to Buyer on account of such claims, then Buyer shall award the same to Seller.  If any claim of Seller is presented to Owner together with claims of Buyer or others, Buyer's reasonable determination as to Seller's share of any award by Owner shall be binding and conclusive on Seller. |
| | c.)    With respect to any claims by Seller solely against Buyer, Seller agrees to be bound by the claims procedure, including the timely submission of claims in writing and the ultimate resort to arbitration, set forth in this Purchase order. |
| **18.)Applicable Law:** | The laws of the State in which the Project is situated shall govern and be applied to this purchase order.  This purchase order shall be deemed to have been entered into at the place and time it is signed by an authorized representative of Buyer. |

C.H. Edwards Incorporated
Purchase Order Number: 204065-015

| 19.)Damaged Material: | In the event materials and equipment are delivered to the job site in a damaged condition, Buyer reserves the right to accept the damaged materials and equipment if Buyer determines that portions of the materials and equipment are usable and advantageous to the progress of the work. In accepting damaged materials and equipment, Buyer reserves the right to: |
|---|---|
| | a.)   Repair the damage or any part thereof at Seller's expense. |
| | b.)   Demand replacement of the damaged parts from Seller, at Seller's expense. |
| | c.)   Purchase the damaged parts elsewhere at Seller's expense in event Seller does not replace the damaged parts     within fifteen (15) calendar days after notice is given by the Buyer. |
| | d.)   Withhold payment therefore until the damaged materials and equipment are repaired or replaced. |

An Equal Opportunity Employer M/F/D/V

Accepted By:   **C.H. Edwards Incorporated**              **Walsh/Davis Joint Venture**

Name: _Matthew Smith_                         Name: _Kevin C. Swan_
      Matthew J. Smith

Title: _Regional Sales Manager_    ~~FILE COPY~~       Title: _Operations Manager_   ~~FILE COPY~~

Date: _2-17-05_                               Date: _2-28-05_

**Invoices Received Without Purchase Order Number Will Be Returned Unpaid.**
**End of Purchase Order**

# Contract Change Order

To:              **C.H. Edwards Incorporated**                  Change Order Number:    **204065-015-001**

|  |  |
|---|---|
| **4005 S. Memorial Drive**<br>**Greenville, NC  27834** | Date: **7/18/2005** |
|  | Project Name: **GSA Federal Building** |
| Attention:   **Matthew Smirne** | Project Number: **204065** |

**Upon Acceptance, this is your authorization to proceed with the work described as follows:**

Expedite 41 Hollow Metal Frames

| Item | Item Description | PCO Number | Cost Code | Approved Cost |
|---|---|---|---|---|
| 70501 | CH Edwards Costs | 7050 | 98-70501-09 | $4,500.00 |

Notes:

**Not valid until signed by the Contractor and Subcontractor**

| | |
|---|---|
| The original Contract Sum was | $879,000.00 |
| Net change by previously authorized Change Orders | $0.00 |
| The Contract Sum prior to this Change Order was | $879,000.00 |
| The Contract Sum will be increased by this Change Order in the amount of | $4,500.00 |
| The new  Contract Sum including this change will be | $883,500.00 |
| The Contract time will be unchanged by | 0 Days |

The date of Substantial Completion as of the date of this Change Order therefore is

| Walsh / Davis Joint Venture | C.H. Edwards Incorporated |
|---|---|
| CONTRACTOR | SUBCONTRACTOR/VENDOR |
| 99 New York Avenue, NE | 4005 S. Memorial Drive |
| Washington, DC  20002 | Greenville, NC  27834 |
| Address | Address |
| By   Kevin Swain | By   Matthew Smirne |
| SIGNATURE | SIGNATURE |
| DATE     26-Jul-05 | DATE    7-20-05 |



RECEIVED
JUN 1 6 2006
C.H. EDWARDS

# Contract Change Order

| To: | **C.H. Edwards Incorporated** | Change Order Number: | **204065-015-002** |
|---|---|---|---|

| | **4005 S. Memorial Drive** | Date: | **3/20/2006** |
|---|---|---|---|
| | **Greenville, NC  27834** | Project Name: | **GSA Federal Building** |
| Attention: | **Matthew Smirne** | Project Number: | **204065** |

**Upon Acceptance, this is your authorization to proceed with the work described as follows:**

Attic Stock

| Item | Item Description | PCO Number | Cost Code | Approved Cost |
|---|---|---|---|---|
| 13501 | Doors/Frames/Hardware Attic Stock per revised base contract option (1 ea panic & fire exit devices in HW Set 90, 3 ea all other items in HW set 90) | 5135 | 97-13501-09 | $23,015.00 |

Notes:

**Not valid until signed by the Contractor and Subcontractor**

| | |
|---|---|
| The original Contract Sum was | $879,000.00 |
| Net change by previously authorized Change Orders | $4,500.00 |
| The Contract Sum prior to this Change Order was | $883,500.00 |
| The Contract Sum will be **increased** by this Change Order in the amount of | $23,015.00 |
| The new Contract Sum including this change will be | $906,515.00 |
| The Contract time will be **unchanged** by | 0 Days |
| The date of Substantial Completion as of the date of this Change Order therefore is | |

Walsh / Davis Joint Venture

CONTRACTOR
99 New York Avenue, NE
Washington, DC  20002
Address

By  Ken C. Swan

SIGNATURE

DATE  10-APR-06

C.H. Edwards Incorporated

SUBCONTRACTOR/VENDOR
4005 S. Memorial Drive
Greenville, NC  27834
Address

By  Matthew Smirne

SIGNATURE  Matthew J. Smirne

DATE  3-27-06

−P004



A Member of the Walsh Group

Walsh/Davis Joint Venture
99 New York Avenue, NE
Washington, DC 20002

# Contract Change Order

| | | | |
|---|---|---|---|
| To: | **C.H. Edwards Incorporated** | Change Order Number: | **204065-015-003** |
| | **4005 S. Memorial Drive** | Date: | **6/13/2006** |
| | **Greenville, NC 27834** | Project Name: | **GSA Federal Building** |
| Attention: | **Matthew Smirne** | Project Number: | **204065** |

**Upon Acceptance, this is your authorization to proceed with the work described as follows:**

Bulletin 16 & 16B ATF Tenant

| Item | Item Description | PCO Number | Cost Code | Approved Cost |
|---|---|---|---|---|
| 51894 | CH Edwards - Bulletin 16 & 16B Final Settlement including General Conditions and previously settled expediting costs of $19,300 | 5189 | 97-51894-09 | $299,300.00 |

Notes:  This Subcontract Change Order Includes The Following Attachments:

Exhibit A - GSA Contract Mod PS89

Exhibit B - Scope of Work

Exhibit C - P3 April Project Schedule Update File #046V

**Not valid until signed by the Contractor and Subcontractor**

| | |
|---|---|
| The original Contract Sum was | $879,000.00 |
| Net change by previously authorized Change Orders | $27,515.00 |
| The Contract Sum prior to this Change Order was | $906,515.00 |
| The Contract Sum will be Increased by this Change Order in the amount of | $299,300.00 |
| The new Contract Sum including this change will be | $1,205,815.00 |
| The Contract time will be increased by | 132 Days |

The date of Substantial Completion as of the date of this Change Order therefore is *SEPTEMBER 28 2006*

| | |
|---|---|
| Walsh / Davis Joint Venture | C.H. Edwards Incorporated |
| CONTRACTOR | SUBCONTRACTOR/VENDOR |
| 99 New York Avenue, NE | 4005 S. Memorial Drive |
| Washington, DC 20002 | Greenville, NC 27834 |
| Address | Address |
| By  KEVIN C. SURRIN | By  Matthew Smirne |
| SIGNATURE *[signature]* | SIGNATURE *[signature]* |
| DATE  25-JUL-06 | DATE  7-19-06 |

*[handwritten notes]*

\* or JM — The $8,029⁰⁰ credit offer by CHE (1-12-05; P001) for deletion of hollow metal frames + doors that changed to aluminum, is considered void.

- Remarks listed in our quotes P006R1 + P006R3 dated 1-20-06 apply and govern where in conflict with other documents.

- Our P009 quote (RFI 0995) will be handled as a separate change order from WDJV. We are proceeding with this RFI as documented in our quote.



# Contract Change Order

To:     **C.H. Edwards Incorporated**                Change Order Number:    **204065-015-004**

          **4005 S. Memorial Drive**                   Date:                   **10/23/2006**
          **Greenville, NC   27834**                   Project Name:           **GSA Federal Building**

Attention:     **Matthew Smirne**                    Project Number:         **204065**

**Upon Acceptance, this is your authorization to proceed with the work described as follows:**

Project Substantial Completion Extension

| Item | Item Description | PCO Number | Cost Code | Approved Cost |
|------|------------------|------------|-----------|---------------|
| 007 | CH Edwards- Project Substantial Completion Extension from 9/28/06 to 2/2/07 | 5378 | | $0.00 |

Notes:   This change order includes the contractual phased substantial completion extension of 9/28/06 to the revised single substantial completion date of 2/2/07. It is Walsh/Davis' intent to pursue with the GSA where applicable the direct and indirect costs associated with this contract extension. These costs would be addressed by separate change order requests or other means as allowed by the contract documents. This change order therefore only sets into place the revised contract completion date and defines the revised contract schedule for the completion of work.

The attached GSA Unilateral Contract Modification "PC109" and Project Completion Schedule "096X" establishes this change order.

**Not valid until signed by the Contractor and Subcontractor**

| | |
|---|---:|
| The original Contract Sum was | $879,000.00 |
| Net change by previously authorized Change Orders | $326,815.00 |
| The Contract Sum prior to this Change Order was | $1,205,815.00 |
| The Contract Sum will be **unchanged** by this Change Order in the amount of | $0.00 |
| The new  Contract Sum including this change will be | $1,205,815.00 |
| The Contract time will be **increased** by | 127 Days |
| The date of Substantial Completion as of the date of this Change Order therefore is | *2/2/07* |

| Walsh / Davis Joint Venture | C.H. Edwards Incorporated |
|---|---|
| CONTRACTOR | SUBCONTRACTOR/VENDOR |
| 99 New York Avenue, NE | 4005 S. Memorial Drive |
| Washington, DC 20002 | Greenville, NC   27834 |
| Address | Address |
| By    *Kevin C. Swan* | By   Matthew Smirne ... |
| SIGNATURE    *[signature]* | SIGNATURE   *[signature]* |
| DATE    *7-Nov-06* | DATE   *10-31-06* |

*MVC*

*/M*

# CONTRACT RECONCILIATION

As of 7/27/07

***GSA Federal Building***
***99 New York Ave., NE***
***Washington, D. C.***

| | | | |
|---|---|---|---|
| ORGINAL CONTRACT VALUE | | | $879,000.00 |
| PLUS CHANGE ORDERS | | | |
| C/O #1 | PCO #7050 - Expedite 41 Hollow Metal Frames | $4,500.00 | |
| C/O #2 | PCO #5135 - Attic Stock | $23,015.00 | |
| C/O #3 | PCO #5189 - Bulletin 16 & 16B ATF Tenant | $299,300.00 | |
| C/O #4 | PCO #5378 - Project Substantion Completion Extension | $0.00 | |
| | TOTAL APPROVED CHANGES | | $326,815.00 |

**REVISED CONTRACT AMOUNT**                                                    **$1,205,815.00**

| | | | |
|---|---|---|---|
| PLUS AUTHORIZED CHANGES/PROCEEDS | | | |
| P009 | RFI #0995 - Revise Sound Rating @ Wood Doors | $18,305.00 | |
| P010 | Expedite 285 Hollow Metal Frames | $36,110.00 | |
| P011 | RFI #1241 and approvals dated 4/4/06 | $0.00 | |
| P020 | PCO #5543 & PCO #7406 | $2,396.00 | |
| P022 | Expedite and Replace Frame @ A054 | $487.00 | |
| | TOTAL AUTHORIZED CHANGES/PROCEEDS | | $57,298.00 |

| | | | |
|---|---|---|---|
| PLUS NON-RETURNED RG's | | | |
| RG000 | 866 Construction Cores | $37,238.00 | |
| | | | $37,238.00 |

**TOTAL CONTRACT VALUE, AS OF 7/27/07**                                        **$1,300,351.00**

LESS AMOUNT PAID TO DATE                                                        -$1,182,871.97

**BALANCE ON JOB, AS OF 7/27/07**                                              **$117,479.03**



EXHIBIT
3

M
*-1001
EGS

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America f/u/b/o C.H. Edwards, Incorporated and C.H. Edwards, Incorporated | James G. Davis Construction Corporation, et al. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Andrew N. Cook, Esq.
Bell, Boyd & Lloyd LLP
1615 L Street, N.W., Suite 1200
DC  20036  (202) 955-6828

Case: 1:08-cv-01001
Assigned To : Sullivan, Emmet G.
Assign. Date : 06/11/2008
Description: Contract

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

JS

5

5

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ◉ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☒ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

40 USC 3131, et seq.; Suit under the Miller Act

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS<br>☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ 117479.03<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form. |
|---|---|---|---|

DATE  June 11, 2008   SIGNATURE OF ATTORNEY OF RECORD   _[signature]_

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.